IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ROY L. ELLIS, ) | 8:06CV723 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM** |
| ) | **AND ORDER** |
| DOUGLAS COUNTY ) | |
| CORRECTION CENTER, et al., ) | |
| ) | |
| Defendants. ) | |

Now before the court are Plaintiff Roy L. Ellis's Motion for Summary Judgment (filing no. 52), Defendant Douglas County, Nebraska's ("Douglas County") Motion for Summary Judgment (filing no. 56), Defendant Douglas County's Motion for Leave to File Corrected Index of Evidence and Amended Brief (filing no. 60), Plaintiff's Objection to the Motion for Extension filed by Defendants Omaha Police Department ("OPD"), Thomas Warren ("Warren"), and Steven Henthorn ("Henthorn") (filing no. 66), a Motion for Summary Judgment filed by Defendants OPD, Henthorn, and Warren (filing no. 68), Plaintiff's Motion for a Bench Trial (filing no. 73), and Plaintiff's Motion to Dismiss Defendants Warren, OPD, and the City of Omaha (filing no. 74). For the reasons explained below, filing numbers 52 and 66 will be denied, and filing numbers 56, 60, 68, 73, and 74 will be granted.

## I. BACKGROUND

Plaintiff filed his Complaint on November 22, 2006. (Filing No. 1.) The Complaint, which is brought pursuant to 42 U.S.C. § 1983, alleges that Defendants are responsible for preventing Plaintiff's fiancé, Jean Fisher ("Fisher"), from visiting Plaintiff during his incarceration at the Douglas County Corrections Center

("DCCC"). (Filing No. 1 at CM/ECF pp. 5-10.)[1]  Plaintiff amended the Complaint on February 26, 2007, adding allegations that Defendants wrongfully moved him to protective custody in early February 2007 (filing no. 11 at CM/ECF pp. 1-3), and adding Captain John Lee ("Lee"), E. Arias ("Arias"), and Director Newton ("Newton") as Defendants (filing no. 12).  Plaintiff also clarified that all of the personally-named defendants are sued in their individual and official capacities. (*See* Filing No. 12.)  There is no indication, however, that Lee, Arias, and Newton were ever served, and they have not appeared in this action.

On November 2, 2007, Plaintiff filed a Motion for Summary Judgment against the City of Omaha, OPD, Warren, and Henthorn. (Filing No. 52.)  In this motion, Plaintiff argues that he is entitled to summary judgment because "the defendant[s] refuse[d] to answer interrogator[ies] . . . in the 30 day period allowed by law." (*Id.* at CM/ECF p. 1.)  On November 9, 2007, Henthorn filed a Notice of Service of Responses to Plaintiff's Interrogatories (filing no. 53), and on November 20, 2007, OPD, Warren, and Henthorn filed a Motion for Extension of Time to Respond to Plaintiff's Interrogatories (filing no. 54), along with a Response to Plaintiff's Motion for Summary Judgment (filing no. 55).  In a text order entered on March 6, 2008, the court granted Defendants' Motion for Extension of Time. (Filing No. 63.)  It appears that this order renders Plaintiff's Motion for Summary Judgment moot, and the motion will therefore be denied.[2]

---

[1]The original Complaint named the DCCC, the Omaha Police Department (OPD), Monika Bell (Bell), Sgt. Carter (Carter), Capt. Hubbard (Hubbard), Chief Thomas Warren (Warren), Det. Steve Henthorn (Henthorn), and S. Jackson (Jackson) as Defendants. (Filing No. 1 at CM/ECF p. 1.)  On initial review, however, the court construed the "intended" Defendants to be Douglas County, Nebraska (as opposed to the DCCC) and the City of Omaha, Nebraska (as opposed to the Omaha Police Department), along with the named individuals. (Filing No. 8 at CM/ECF p. 1.)

[2]It should be noted too that Plaintiff has moved to dismiss the City of Omaha, OPD, and Warren from this action. (*See* Filing No. 74.)  This motion will be

On December 28, 2007, Douglas County filed a Motion for Summary Judgment (filing no. 56), along with a supporting brief, an index of evidence, and a set of evidentiary materials (*see* filing nos. 57, 58, 59). On February 20, 2008, Douglas County filed a "Motion for Leave to File Corrected Index of Evidence and Amended Brief" (filing no. 60), together with copies of the corrected index and amended brief (filing nos. 61, 62). The Motion for Leave has not been opposed, and the court finds that it should be granted. Douglas County's Motion for Summary Judgment will be analyzed below, and the corrected index and amended brief will be considered in this analysis.

On March 24, 2008, OPD, Henthorn, and Warren filed a "Motion for Extension of Time to File Summary Judgment." (Filing No. 65.) Over Plaintiff's objection (*see* filing no. 66), the court granted Defendants' Motion for Extension (filing no. 67). Nevertheless, filing number 66 remains listed as a pending motion on the docket sheet–perhaps because Plaintiff designated his opposing brief as a "Motion for Objection for Time to File Summary Judgment." The court will enter an order denying filing number 66.

On April 24, 2008, OPD, Henthorn, and Warren filed a Motion for Summary Judgment. (Filing No. 68.) Thereafter, Plaintiff filed a "Motion to Relieve" Defendants OPD, Warren, and the City of Omaha. (Filing No. 74 at CM/ECF p. 1.) In his Motion to Relieve, Plaintiff states that these Defendants should be excused "for [the] reasons that I do not believed [sic] played a part in this matter, but I will hold Det. Steven Henthorn totally responsible in his individual capacity and will not relieve him of this claim." (*Id.*) The court construes Plaintiff's Motion to Relieve as a Motion to Dismiss Defendants OPD, Warren, and the City of Omaha pursuant to Federal Rule of Civil Procedure 41(a)(2), and as Defendants do not object to the motion (*see* filing no. 75 at CM/ECF p. 2), it shall be granted. All claims against

---

addressed below.

3

Defendants OPD, Warren, and the City of Omaha are dismissed without prejudice. The Defendants' Motion for Summary Judgment (filing no. 68)–which remains at issue only insofar as it pertains to Henthorn (in his individual capacity)–will be analyzed below.

On June 2, 2008, Plaintiff filed a Motion for a Bench Trial (Filing No. 73.) Although Defendants Douglas County, Bell, Hubbard, Carter, and Jackson filed an answer that includes a demand for a jury trial (*see* filing no. 28 at CM/ECF p. 2), they have not responded to Plaintiff's motion. Henthorn, for his part, states that he has no objection to Plaintiff's motion. (*See* Filing No. 75 at CM/ECF p. 2.) Plaintiff's Motion for a Bench Trial will be granted.

As noted above, Douglas County's Motion for Summary Judgment (filing no. 56) and Henthorn's Motion for Summary Judgment (filing no. 68) remain to be resolved. The court's analysis of these motions is set forth below.

## II. DOUGLAS COUNTY'S MOTION FOR SUMMARY JUDGMENT

Douglas County filed its Motion for Summary Judgment on December 28, 2007. (Filing No. 56.) This Motion was accompanied by an index of evidence and a supporting brief (filing nos. 57, 58, 59), and, as noted previously, a corrected index and an amended brief were filed on February 20, 2008 (filing nos. 61, 62). Plaintiff has not filed an opposing brief–or any other response–to Douglas County's motion. (*See* Docket Sheet.)

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's

statement of material facts." NECivR 56.1(b)(1). This response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations supporting the opposition. *Id.* "Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response." *Id.* (emphasis omitted).

Although Douglas County has submitted a statement of material facts, Plaintiff has not submitted a "concise response" to those facts. Douglas County's Motion is deemed to be fully submitted and, to the extent that they are "properly referenced," the material facts set forth by Douglas County are "deemed admitted" due to Plaintiff's failure to controvert those facts.

## A.     Undisputed Material Facts

1.     At relevant times, Plaintiff has been incarcerated in the DCCC. (Filing No. 59-16, Attach. 15, at CM/ECF p. 1.)

2.     On or about June 13, 2006, Plaintiff completed an Inmate Visitation Request Form. (Filing No. 59-12, Attach. 11, at CM/ECF p. 7.) On this form, Plaintiff asked that Fisher be added to his list of visitors. (*See id.*)

3.     Fisher was allowed to visit Plaintiff on June 20, 2006; June 23, 2006; June 30, 2006; July 14, 2006; July 21, 2006; August 4, 2006; August 18, 2006; September 8, 2006; September 15, 2006; and September 22, 2006. (Filing No. 59-3, Attach. 2, at CM/ECF pp. 2, 3, 5, 6, 8, 16-19; Filing No. 59-4, Attach. 3, at CM/ECF p. 6.)

4.     Fisher attempted to visit Plaintiff on July 28, 2006, and on October 6, 2006, but the visits were disallowed. (Filing No. 59-3, Attach. 2, at CM/ECF pp. 4, 15.) There is evidence that on October 6, 2006, Plaintiff was on "lockdown" due to

rules violations and inappropriate behavior and because he posed "a serious threat to the security of the facility." (Filing No. 59-12, Attach. 11, at CM/ECF p. 10.)[3]

5. The Complaint alleges that "for three weeks straight" during October 2006, Fisher attempted to visit Plaintiff, but her visits were disallowed. (Filing No. 1 at CM/ECF pp. 5.) The specific dates of the disallowed visits are not specified in the Complaint. (*See generally id.*) Plaintiff claims that Defendants' refusal to allow him to visit Fisher during October 2006 violated Plaintiff's constitutional rights. (*See generally id.*)

6. On October 21, 2006, Henthorn asked, on behalf of OPD, that Fisher be removed from Plaintiff's visitation list because she was a suspect in a pending criminal investigation. (Filing No. 61 at CM/ECF p. 4 (citations omitted).)

7. The record includes a copy of a subpoena directed to "Douglas County Corrections" dated October 27, 2006, and signed by the Chief Deputy Douglas County Attorney. (Filing No. 1 at CM/ECF p. 21.) In substance, the subpoena states,

> Pursuant to an official criminal investigation of a suspected criminal violation of Nebraska State Statute [illegible] being conducted by the Omaha Police Department, Omaha, Nebraska. It is being requested that your Correctional Facility stop visits between inmate Roy ELLIS . . . and Jean FISHER.

(*Id.*)

8. On October 21, 2006, October 22, 2006, November 7, 2006, November

---

[3] Douglas County alleges, without citing any supporting evidence, that the July 28, 2006, visit was also disallowed "because the Plaintif was in lockdown and unable to receive visitors per [DCCC] policies." (Filing No. 61 at CM/ECF p. 4.)

9, 2006, December 9, 2006, and December 16, 2006, Plaintiff submitted "inmate requests" in which he complained about the removal of Fisher from his visitation list. (Filing No. 59-4, Attach. 3, at CM/ECF pp. 7, 9, 12; Filing No. 59-5, Attach. 4, at CM/ECF p. 16; Filing No. 59-6, Attach. 5, at CM/ECF p. 1; Filing No. 59-7, Attach. 6, at CM/ECF p. 9; Filing No. 59-9, Attach. 8, at CM/ECF p. 8, 10.) On October 22, 2006, Plaintiff filed a "Step One" Inmate Grievance Form concerning the removal of Fisher from his visitation list. (Filing No. 59-13, Attach. 12, at CM/ECF p. 3.) On November 8, 2006, he filed a "Step Two" Inmate Grievance Appeal Form concerning the same issue. (Filing No. 59-13, Attach. 12, at CM/ECF p. 2.)

9.  On February 6, 2007, Plaintiff was placed in protective custody for "Security–Inmate safety." (Filing No. 59-11, Attach. 10, at CM/ECF pp. 7, 9.) On February 8, 2007, the Protective Custody Status Review Committee recommended that Plaintiff remain in protective custody "per OPD Detective Henthorn," and the "Captain of Custody or Designee" decided that Plaintiff would remain in protective custody "per OPD directives." (*Id.* at CM/ECF p. 9.)

10.  Plaintiff submitted inmate requests concerning his placement in protective custody on February 12, 2007, February 13, 2007, February 18, 2007, and February 23, 2007. (Filing No. 59-4, Attach. 3, at CM/ECF p. 17; Filing No. 59-8, Attach. 7, at CM/ECF p. 6, 9, 11.) There is no evidence, however, that Plaintiff filed any grievances concerning this issue.

**B.     Analysis**

**1.     Standard of Review**

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

7

Fed. R. Civ. Pro. 56(c). *See also* Egan v. Wells Fargo Alarm Servs., 23 F.3d 1444, 1446 (8th Cir. 1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. Dancy v. Hyster Co., 127 F.3d 649, 652 (8th Cir. 1997).

If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, then the burden shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). *See also* Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial."). That is, the nonmoving party "must substantiate his allegations with 'sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy.'" Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

### 2. **Plaintiff's Visitation Claim**

The Complaint alleges that Douglas County violated Plaintiff's constitutional rights by preventing him from having visits from Fisher during the month of October 2006. (*See generally* Filing No. 1.) Douglas County argues that it is entitled to summary judgment on this claim for a number of reasons. First, it submits that Plaintiff has no standing to bring a denial-of-visitation claim. (*See* Filing No. 61 at

CM/ECF p. 10.) In support of this argument, Douglas County relies solely upon *Grigger v. Goord*, 811 N.Y.S.2d 161 (N.Y. App. Div. 2006). In *Grigger*, an inmate's mother was denied entry into a correctional facility after she tested positive for contact with cocaine during a pre-visitation ion scanner screening. The inmate argued that the facility's actions restricted his "privilege of visitation" in violation of applicable state regulations. *Id.* at 162. In affirming the trial court's decision to dismiss the inmate's petition for lack of standing, the appellate court explained:

> The basis for standing to seek judicial review of such a restriction . . . is an injury in fact caused by the action or policy in question. Petitioner does not and cannot claim standing based upon his loss of visitation privileges with his mother because it was her ability to visit, rather than his own privilege of receiving her as a visitor, that was restricted after the ion scanner found traces of cocaine on her person. Although he was indirectly affected by that incident, petitioner cites no actual or reasonably probable occasion when use of the scanner has or will deprive him of his own visitation privileges. In the absence of a qualifying injury, [the] Supreme Court correctly found that petitioner failed to establish his standing to challenge the use of the ion scanner.

*Id.* Douglas County seems to suggest that, in accordance with *Grigger*, only Fisher has standing to bring a denial-of-visitation claim under § 1983. This argument is not persuasive. *Grigger* does not hold that inmates *never* have standing to bring denial of visitation claims; rather, it holds that inmates must show that their own visitation privileges were restricted in order to obtain standing. There is a genuine issue as to whether Defendants restricted Plaintiff's visitation privileges; indeed, it is undisputed that Fisher was removed from Plaintiff's list of visitors at OPD's request. Therefore, *Grigger* is not analogous to the instant case.[4]

---

[4]*Grigger* also states that "prison inmates do not have a right to visitation that is protected by the federal . . . constitution." 811 N.Y.S.2d at 162. Apart from a single clause inserted into in the conclusion section of its brief, however, Douglas County does not argue that it is entitled to summary judgment for this reason,

Douglas County argues next that the DCCC "Director's professional judgment, together with the requests of the OPD and the [County Attorney's] office must be given great deference for defining the legitimate goals of the corrections system and determining the most appropriate means to accomplish them," and that "the prohibition of a visitor who is suspected of ongoing criminal activity with an inmate bears a self-evident connection to the County's interest in maintaining security and preventing crime." (Filing No. 61 at CM/ECF p. 11 (citing *Overton v. Bazzetta*, 539 U.S. 126 (2003)). *See also id.* at 12 (arguing that summary judgment is appropriate because there is a "rational relationship" between Douglas County's visitation policy and "legitimate penological interests").)  Defendant's argument has merit.

In *Overton*, the Supreme Court applied the four-factor test set forth in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987), to determine whether prison regulations limiting visitation rights could withstand a challenge based on a constitutional right of association.  The first of these factors is "whether the regulation has a 'valid, rational

---

focusing instead on the question of standing. (*See* Filing No. 61 at CM/ECF p. 10; *See also id.* at CM/ECF p. 16 ("Ellis does not have a constitutional right to visitation . . . .").)  The question whether inmates have a constitutionally-protected right to visitation has been the subject of much analysis. *See generally, e.g.*, *Steinbach v. Branson*, No. 1:05-cv-101, 2007 WL 2985571 (D.N.D. Oct. 9, 2007).  Nevertheless, because Defendant makes only a casual reference to this issue, the court assumes for the purposes of this Memorandum and Order that inmates do possess such a right.  The court notes in passing that this assumption is not inconsistent with recent Supreme Court cases addressing the issue of inmate rights. *See Overton v. Bazzetta*, 539 U.S. 126, (2003) ("We do not hold, and we do not imply, that any right to intimate association is altogether terminated by incarceration or is always irrelevant to claims made by prisoners."); *Johnson v. California*, 543 U.S. 499, 510 (2005) (explaining that a "reasonable relationship" test applies when "rights that are 'inconsistent with proper incarceration'" are implicated). *But see Ware v. Morrison*, 276 F.3d 385, 387-88 (8th Cir. 2002) (holding that a "loss of visitation privileges" did not implicate the Due Process Clause because it was "within the ordinary incidents of confinement and cannot be considered an atypical and significant hardship").

connection' to a legitimate governmental interest." *Overton*, 539 U.S. at 132. The second is "whether alternative means are open to inmates to exercise the asserted right." *Id.* The third is "what impact an accommodation of the right would have on guards and inmates and prison resources." *Id.* The fourth factor is "whether there are 'ready alternatives' to the regulation." *Id.* Focusing on the first of these factors, Douglas County cites undisputed evidence that Plaintiff was not allowed to visit with Fisher on October 6, 2006, for security reasons; that on October 21, 2006, OPD asked DCCC to restrict Plaintiff's visits with Fisher because of an ongoing criminal investigation; and that on October 27, 2006, DCCC was presented with a subpoena requesting that visits between Plaintiff and Fisher be stopped due to that criminal investigation. In light of this evidence, there is no genuine dispute that restrictions placed upon Plaintiff's visits with Fisher on October 6, 2006, and after DCCC was informed of the criminal investigation on October 21, 2006, were rationally related to legitimate penological interests.

It is true that Plaintiff alleges that he was denied visits with Fisher for "three weeks straight" in October 2006. (Filing No. 1 at CM/ECF p. 5.) However, the specific dates of these disallowed visits are not specified, and in any event Plaintiff may not avoid summary judgment merely by relying on the allegations set forth in his pleading. *See* Fed. R. Civ. P. 56(e)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Indeed, there is no evidence before the court indicating that Plaintiff was denied visits with Fisher on any particular day during October 2006, with the exception of October 6.

As noted above, the question whether the restriction "has a 'valid, rational connection' to a legitimate governmental interest" is but one of the four *Overton* factors. *See* 539 U.S. at 132-136. Douglas County failed to address the three remaining factors in its brief. It is not Defendant's burden, however, to prove the validity of the restrictions placed on Plaintiff's visits; rather, it is Plaintiff's burden to establish the restrictions' invalidity. *Overton*, 539 U.S. at 132. Therefore, Douglas

11

County is not required to negate Plaintiff's claim in order to demonstrate that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Plaintiff has not come forward with evidence relevant to any of the remaining *Overton* factors: there is no evidence that Plaintiff could not have exercised his right to association through means other than visits; that the accommodation of his associational right would not have significantly impacted guards, other inmates, the allocation of institutional resources, or safety; or that the reasonableness of the visitation restrictions is undermined by "the presence of ready alternatives." *Overton*, 539 U.S. at 135-36. Therefore, the court finds that there is no genuine issue for trial, and Douglas County is entitled to summary judgment on Plaintiff's visitation claim.

### 3. Plaintiff's Protective Custody Claim

As amended, the Complaint alleges that on February 6, 2007, Plaintiff was placed in protective custody in violation of his due process and Eighth Amendment rights. (*See generally* Filing No. 11.) Douglas County argues that it is entitled to summary judgment on this claim because Plaintiff failed to exhaust the available administrative remedies before filing suit. (*See* Filing No. 61 at CM/ECF p. 13-15.)

Douglas County's argument is persuasive. The Prison Litigation Reform Act of 1995 (PLRA) provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has explained that the PLRA requires "proper exhaustion"; that is, before filing suit, inmates must use all of the steps that the institution holds out in order to allow the institution to address the issue on the merits. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006); *see also Jones v. Bock*, 127 S. Ct. 910, 922 (2007) ("In *Woodford*, we held that to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural

rules,'. . . ."). "Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

DCCC maintains a grievance procedure (*see* filing no. 59-19, Attach. 18, at CM/ECF pp. 1-2), and there is no dispute that Plaintiff failed to follow this procedure to raise his complaints about his placement in protective custody in February 2007. Therefore, Plaintiff's "protective custody" claim is unexhausted and cannot be considered.

In summary, for the reasons set forth above, the court concludes that there are no genuine issues of material fact for trial, and that Douglas County is entitled to judgment as a matter of law on each of Plaintiff's claims.

### III.   HENTHORN'S MOTION FOR SUMMARY JUDGMENT

Henthorn's Motion for Summary Judgment was filed on April 24, 2008, along with an index of evidence and a supporting brief. (Filing Nos. 68, 69, 70.) Plaintiff has not responded to Henthorn's Motion. (*See* Docket Sheet.) Henthorn's Motion, like Douglas County's Motion, is deemed fully submitted, and all properly referenced facts set forth in Henthorn's brief are deemed admitted.

### A.   Undisputed Material Facts

1.   At relevant times, Henthorn was a member of OPD's "criminal investigation unit homicide/assault unit." (Filing No. 69-4, Attach. 3, at CM/ECF p. 1.)

2.   In February 2006, Henthorn began investigating the murder of Amber Harris. (Filing No. 69-4, Attach. 3, at CM/ECF p. 1.) In May 2006, Plaintiff became the primary suspect in this investigation. (*Id.*)  In addition, Henthorn began to

investigate charges of false imprisonment and terroristic threats that had been raised against Plaintiff. (*Id.*)

3. On June 2, 2006, Plaintiff was arrested "for false imprisonment and terroristic threats made against Antoinette Pollock." ([Filing No. 69-4, Attach. 3](), at CM/ECF p. 1-2.) After his arrest, Plaintiff was placed in the custody of DCCC. (*Id.* at CM/ECF p. 2.)

4. In September 2006, "evidence obtained in the false imprisonment and terroristic threat case" led to the opening of a witness tampering case against Plaintiff and Fisher. ([Filing No. 69-4, Attach. 3](), at CM/ECF p. 2.) "The witness tampering case was based upon communications from [Plaintiff], through Jean Fisher, which were intended to discourage Antoinette Pollock from testifying against [Plaintiff]." (*Id.*)

5. On or about September 29, 2006, Fisher was arrested for witness tampering, although she "was released pending prosecution of the charges." ([Filing No. 69-4, Attach. 3](), at CM/ECF p. 3.) On this same date, Plaintiff was "booked for tampering with a witness and protection order violation." (*Id.*)

6. On October 21, 2007, Henthorn contacted DCCC and requested that Fisher be removed from Plaintiff's list of visitors. (*See* [Filing No. 70]() at CM/ECF p. 4.) DCCC responded by requesting that Henthorn obtain and submit a subpoena. (*Id.*) On or about October 27, 2006, Henthorn obtained a subpoena to remove Fisher from Plaintiff's list of visitors and delivered the subpoena to DCCC. (*Id.* at CM/ECF pp. 3-4.) The subpoena has been reproduced, in relevant part, above. (*See supra* Part II.A., ¶ 7.)

7. In February 2007, Plaintiff was placed in protective custody at Henthorn's request. ([Filing No. 69-4, Attach. 3](), at CM/ECF p. 4.) Henthorn states

that made this request out of concern for Plaintiff's safety and the safety of other inmates. (*Id.*)

**B.     Analysis**

    **1.     Standard of Review**

The same rules that govern the court's analysis of Douglas County's Motion for Summary Judgment apply to Henthorn's Motion for Summary Judgment. (*See supra* Part II.B.1.) These familiar rules need not be repeated here.

    **2.     Plaintiff's Visitation Claim**

Henthorn argues that he is entitled to summary judgment on Plaintiff's visitation claim because "it cannot be a constitutional violation for the institution to place reasonable restrictions on [Plaintiff's] visits." ([Filing No. 70](#) at CM/ECF p. 9.) Henthorn adds that "he requested Jean Fisher be removed from [Plaintiff's] list only after he discovered substantial evidence of witness tampering by Jean Fisher and [Plaintiff] against Antoinette Pollock and only after Jean Fisher was arrested on the witness tampering charges." ([Filing No. 70](#) at CM/ECF p. 7.) Although his argument is somewhat unclear, Henthorn appears to claim that he cannot be held liable for violating Plaintiff's visitation rights because the institution did not violate Plaintiff's visitation rights; the institution, in turn, did not violate Plaintiff's rights (according to Henthorn) because the visitation restrictions were reasonable in light of Henthorn's witness tampering investigation.

Henthorn's argument that Plaintiff's visitation rights were not violated is based primarily on *[Overton v. Bazzetta,](#) 539 U.S. 126 (2003)*. Henthorn's brief, like Douglas County's, focuses on the first of the *Overton* factors, i.e., "whether the regulation has a 'valid, rational connection' to a legitimate governmental interest."

*Overton*, 539 U.S. at 132. The undisputed evidence shows that Henthorn asked Douglas County to limit Plaintiff's visits with Fisher in the interests of safety and crime prevention. Therefore, the court finds that any restrictions placed on Plaintiff's visits with Fisher that might be attributable to Henthorn were rationally connected to legitimate governmental interests. Moreover, because Plaintiff has not come forward with evidence suggesting that he was unable to exercise his right of association through other means; that the accommodation of his associational right would not have significantly impacted guards, other inmates, the allocation of prison resources, or safety; or that "the presence of ready alternatives" undermined the reasonableness of the visitation restrictions, *Overton*, 539 U.S. at 135-36, the court finds that there is no genuine issue for trial, and that Henthorn is entitled to summary judgment on Plaintiff's visitation claim.

### 3. Plaintiff's Protective Custody Claim

As noted above, Plaintiff alleges that on February 6, 2007, he was placed in protective custody in violation of his due process and Eighth Amendment rights. (*See generally* Filing No. 11.) Henthorn argues, *inter alia*, that he is entitled to summary judgment on this claim because Plaintiff failed to exhaust the administrative remedies that were available to him. (*See* Filing No. 70 at CM/ECF p. 10-11.) For the reasons stated above (*see supra* Part II.B.3), Henthorn is entitled to summary judgment on Plaintiff's protective custody claim.

The court pauses to highlight the net effect of this Memorandum and Order: All claims against Thomas Warren, the Omaha Police Department, and the City of Omaha are dismissed without prejudice, and Douglas County and Henthorn are entitled to summary judgment on each of Plaintiff's claims. As Defendants Bell, Hubbard, Carter, Jackson filed no motions for summary judgment, each of Plaintiff's claims remains viable against them insofar as they are sued in their individual capacities. The opportunity for these Defendants to submit motions for summary

16

judgment has expired; however, based on the evidence set forth in Douglas County's and Henthorn's motions for summary judgment, and in light of Plaintiff's failure to oppose those motions, the court doubts whether this case ought to proceed to trial against Bell, Hubbard, Carter, and Jackson. Therefore, these Defendants will be given twenty days from the date of this order within which to file motions for summary judgment.

IT IS THEREFORE ORDERED that:

1. Plaintiff Roy L. Ellis's Motion for Summary Judgment, filing no. 52, is denied.

2. Defendant Douglas County's Motion for Summary Judgment, filing no. 56, is granted.

3. Defendant Douglas County's Motion for Leave to File Corrected Index of Evidence and Amended Brief, filing no. 60, is granted.

4. Plaintiff's Objection to Defendants' Motion for Extension, filing no. 66, is denied.

5. The Motion for Summary Judgment filed by Henthorn, filing no. 68, is granted.

6. Plaintiff's Motion for a Bench Trial, filing no. 73, is granted.

7. Plaintiff's Motion to Dismiss Defendants Thomas Warren, the Omaha Police Department, and the City of Omaha, filing no. 74, is granted and the claims against these three Defendants are dismissed without prejudice.

8. Defendants Bell, Hubbard, Carter, and Jackson shall have twenty days within which to file motions for summary judgment. Plaintiff may file a response brief within twenty days of the filing of any such motion.

August 22, 2008.    BY THE COURT:

                                        s/ Joseph F. Bataillon
                                        Chief United States District Judge